UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| GARY D. BOOTH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action Number |
| ) | **2:20-cv-00537-AKK** |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY ADMINISTRATION, ) | |
| ) | |
| Defendant. ) | |

## **MEMORANDUM OPINION**

Gary Booth brings this action under 42 U.S.C. § 405(g) of the Social Security Act appealing the final adverse decision of the Commissioner of the Social Security Administration. The court finds that the Administrative Law Judge ("ALJ") applied the correct legal standards and that substantial evidence does not support the ALJ's decision. Therefore, the court affirms the ALJ's decision.

**I.**

Booth worked for over 25 years, including as a project estimator. R. 27-28, 62. According to Booth, he lost his job in 2017 because he missed too many days due to debilitating back pain. R. 43. He applied for Disability Insurance and Disability Insurance Benefits ("SSDI"), alleging a disability onset of February 17, 2017, due to lower back pain, nerve damage in the right and left leg, degenerative

disc disease, and arthritis.  R. 51-52.  The Commissioner denied the application, R. 88, and Booth requested and received a hearing before an ALJ, R. 95, 21-50.  The ALJ subsequently issued a decision finding that Booth was not disabled.  R. 70-83.  The Appeals Council denied review, R. 1, rendering the ALJ's decision the final decision of the Commissioner.  Booth then filed this action for judicial review under 42 U.S.C. § 405(g).

## II.

This court's review is limited to determining whether the record contains substantial evidence to sustain the ALJ's decision and whether the ALJ applied the correct legal standard.  *See* 42 U.S.C. § 405(g); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  Under 42 U.S.C. §§ 405(g) and 1383(c)(3), the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'"  *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  Thus, the court cannot reconsider the facts, reevaluate the evidence, or substitute its judgment for the Commissioner's.  *Id.*  Instead, it must review the final decision as a whole and determine if it is "'reasonable and supported by substantial evidence.'"  *Id.* (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence refers to "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Id.* (quoting *Bloodsworth*, 703 F.2d at 1239).  As the Supreme Court recently emphasized, this burden "is not high."

*Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).  Rather, substantial evidence falls somewhere between a "scintilla" and a "preponderance of evidence."  *Martin*, 894 F.2d at 1529.  If substantial evidence supports the Commissioner's factual findings, then the court must affirm even if the evidence preponderates against those findings.  *See id.*  However, this "does not yield automatic affirmance" despite the limited scope of judicial review, *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988), and reviewing courts are not to act as mere "automatons."  *Bloodsworth*, 703 F.2d at 1239 (quotation omitted).  The ALJ's conclusions of law, in contrast, receive de novo review.  *Martin*, 894 F.2d at 1529.  Reversal is proper if the ALJ applies the incorrect legal standard or provides an insufficient basis for the court to determine that the correct legal principles have been followed.  *See Bowen v. Heckler*, 748 F.2d 629, 635–36 (11th Cir. 1984).

### III.

The fundamental inquiry into any application for SSDI is whether the claimant is "disabled," 42 U.S.C. § 423(d)(2)(A); *see also Barnhart v. Thomas*, 540 U.S. 20, 21–22 (2003), meaning that he is unable to engage in any substantial gainful activity due to any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period greater than or equal to 12 months, 42 U.S.C. §§ 416(i)(1)(A), 423(d)(1)(A).

A.

The Social Security Act requires the ALJ to apply a five-step sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. § 404.1520(a); *accord Phillips v. Barnhart*, 357 F.3d 1232, 1237-40 (11th Cir. 2004). Specifically, the ALJ must determine in sequence whether:

(1) the claimant is currently unemployed;

(2) the claimant has a severe impairment;

(3) the impairment meets or equals one listed by the Commissioner;

(4) the claimant is unable to perform his or her past work; and

(5) the claimant is unable to perform any work in the national economy.

*Phillips*, 357 F.3d at 1237. "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *McDaniel*, 800 F.2d at 1030 (citing 20 C.F.R. § 416.920(a)-(f)). "Once the finding is made that a claimant cannot return to prior work the burden of proof shifts to the [Commissioner] to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995).

B.

Claimants, such as Booth, alleging disability based on their subjective pain must meet additional criteria. The Eleventh Circuit applies a three-part "pain

standard" when a claimant seeks to establish disability through his own testimony of pain or other subjective symptoms. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). Under that standard, the claimant must show:

> (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.

*Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002); *see* 20 C.F.R. § 416.1529(a)-(c). "A claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability." *Holt*, 921 F.2d at 1223. Thus, if a claimant testifies to disabling pain and satisfies the three-part pain standard, the ALJ must find a disability unless the ALJ properly discredits the claimant's testimony.

If the ALJ finds that the claimant has a medically determinable impairment that could reasonably be expected to produce his symptoms, "the ALJ must evaluate the intensity and persistence of the symptoms to determine how they limit the claimant's capacity for work." *Costigan v. Comm'r*, 603 F. App'x 783, 786 (11th Cir. 2015) (citing 20 C.F.R. § 404.1529(c)(1)). In this evaluation, the ALJ must consider:

> (1) the claimant's daily activities; (2) the nature, location, onset, duration, frequency, radiation, and intensity of pain and other symptoms; (3) precipitating and aggravating factors; (4) adverse side-effects of medications, and (5) treatment or measures taken by the claimant for relief of symptoms.

*Id.* at 786-87 (citing 20 C.F.R. § 404.1529(c)(3)(i)-(vi)).  In addition, if the ALJ does not provide reasons for rejecting subjective pain testimony, then the ALJ is deemed to have accepted the testimony as true.  *Hale v. Bowen*, 831 F.2d 1007, 1012 (11th Cir. 1987).  Therefore, if the ALJ either fails to articulate reasons for refusing to credit the claimant's pain testimony, or if the ALJ's reasons are not supported by substantial evidence, the court must accept as true the claimant's pain testimony and render a finding of disability.  *Hale*, 831 F.2d at 1012.

## IV.

In this case, at Step One, the ALJ determined that Booth has not engaged in gainful activity since February 16, 2017.  R. 72.  At Step Two, the ALJ found that Booth has severe impairments of anxiety, degenerative disc disease, and long-term drug therapy.  R. 72.  At Step Three, the ALJ found that Booth did not have an impairment or combination of impairments that met or equaled the severity of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  R. 73.  Although the ALJ answered question three in the negative, consistent with the law, *see McDaniel*, 800 F.2d at 1030, the ALJ proceeded to the next step.  The ALJ found Booth had the RFC to perform light work, as defined in 20 C.F.R. § 404.1567(b), except that Booth can only "occasionally climb ramps or stairs, but never climb ladders, ropes, or scaffolds; occasionally balance, stoop, kneel, crouch, or crawl; [have] no exposure to excessive vibration; never be exposed to workplace hazards

6

such as moving mechanical parts and high, exposed places; and [is] limited to simple routine tasks but not a production rate pace." R. 75-76.  Then, at Step Four, based on Booth's RFC and the testimony of a vocational expert, the ALJ found that Booth was unable to perform his past relevant work as a project estimator. R. 81-82.  At Step Five, relying on the vocational expert's testimony, the ALJ determined that jobs exist in significant numbers in the national economy that Booth could perform given his age, education, work experience and RFC, including mail sorter, label coder, and laundry folder.  R. at 82-83.  Therefore, the ALJ determined that Booth was not under a disability as defined by the Social Security Act from the alleged onset date through the date of the ALJ's decision.  R. 83.

## V.

Booth contends that the ALJ erred by failing to properly consider his subjective testimony of debilitating back pain.  Doc. 14 at 5-15.  At issue here is Booth's testimony that he is disabled primarily due to chronic, constant, and severe back pain caused by degenerative disc disease. R. 23-44.  Booth testified that he has been in pain management and taken pain medication for nineteen years; that his back pain has increased and pain shoots down his right leg; that he can no longer do any yardwork because it aggravates his back to such a degree that he must stay in bed for one to two days afterwards; and that sneezing can exacerbate his pain.  R. 29, 31-33.  Booth also testified that he tries to avoid driving because of the amount of pain

medication he takes and that shopping in stores aggravates his back pain. *See* R. 37-39. According to Booth, he has to lie on the floor with a pillow under his legs for about ten to fifteen minutes every hour or two to relieve his back pain; he can only stand or sit comfortably for about ten to fifteen minutes at a time; he cannot carry a full clothes basket; and he can only walk about half a block before he must rest. R. 40-42. And, Booth reports that even on pain medication, his pain level is typically a five on a scale of zero to ten, but "jumps back and forth to an eight" throughout the day. R. 42. Finally, Booth testified that he missed work three to four days a month due to his back pain. R. 43.

The ALJ found that Booth's allegations concerning the intensity, persistence and limiting effects of his symptoms were not consistent with the objective medical evidence: "the evidence as a whole fails to confirm a disabling level of functional limitations caused by any physical or mental impairment[,]" and Booth's "description of the symptoms and limitations [caused by his impairments] . . . has generally been inconsistent and unpersuasive." R. at 76-7. Booth contends that the ALJ erred in reaching those conclusions by purportedly (1) focusing only on the selective portions of Booth's medical records and ignoring or minimizing other relevant parts of the records, and (2) ignoring the limitations Booth reported regarding his daily activities. Doc. 14 at 8-15. For the reasons discussed below, the

ALJ's discussion of Booth's medical records shows that he considered Booth's condition as a whole, and substantial evidence supports the ALJ's decision.

## A.

Booth's first contention of error is related to the ALJ's alleged selective interpretation of the medical record. But, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision . . . is not a broad rejection which is 'not enough to enable the district court . . . to conclude that the ALJ considered [the claimant's] medical condition as a whole.'" *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (quoting *Foote*, 67 F.3d 1561). And, here, Booth is incorrect that the ALJ failed to consider his medical record as a whole.

The record reveals that Booth has received treatment for low back pain since the 1990s and has a diagnosis of "multilevel degenerative changes at L1, L4-5 [and] loss of disc height stenosis L4-5, L5-S1." R. 444, 519. As the ALJ noted, Booth "has a long history of pain management for back pain with Daniel Doleys, [Ph.D.] at the Doleys Clinic since around 2003." R. 77. Records from the Doleys Clinic reflect that, in spite of long-term drug therapy, Booth consistently reported back pain that he described as aching, burning, and sharp or shooting, with bilateral leg pain, and that the pain was aggravated by bending, sitting, and standing. R. 325-26, 444, 449, 453, 514, 532, 537, 560. As the ALJ noted, however, the objective reports show

9

that doctors at the Doleys Clinic observed that Booth exhibited minimal pain behavior during visits and could rise easily from a seated position without requiring any assistance from his arms during most of his appointments in 2017 and 2018. R. 328, 345, 446, 451, 516, 534, 538, 562.

As the ALJ also discussed, records from the Doleys Clinic reflect that Booth had a significant reduction in pain with medication. R. 77. Indeed, in January 2018, Booth reported he was "80% better" and could "function around the home," but was unable "to work productively at any full-time occupation."[1] R. 428, 453-54. Then, in March and June 2018, Booth reported that he was still "80% improved from baseline on his current treatment plan" and that with medication he was "able to perform housekeeping tasks and work." R. 447, 452. But, Booth's ability to function regressed briefly after Dr. Doleys and Dr. Christopher Hill noted that Booth was taking his medication more often than prescribed. Consequently, Dr. Hill adjusted the medication in August 2018 by discontinuing the prescription for Percocet and starting Booth instead on oxycodone and a Butrans patch. R. 517, 520. One month later, Booth continued to report he was "80% improved from baseline on his current treatment plan," though his treatment notes do not reflect whether he

---

[1] The record states, "He is able to function around the home but on able [sic] to work productively at any full-time occupation." R. 428. But, the record is accompanied with a disclaimer that a voice recognition software was used in the creation of the record. *Id.* Thus, the statement that Booth was "on able" to work almost certainly reflect that Booth was unable to work.

10

could still perform work. R. 563. Two months after the medication change, Booth reported that he was only 50% improved with current treatment, and Dr. Hill then discontinued the oxycodone and increased the prescription for a Butrans patch. R. 540. After the change, in November 2018, Booth's most recent visit to the Doleys Clinic during the relevant time, Booth reported that he was only 25% improved on his current treatment plan and that the Butrans patch did not manage his pain as well as the Percocet. R. 535. As a result, Dr. Hill restarted Booth's prescription for Percocet. R. 535. In light of this change and Booth's earlier reports while taking Percocet, the ALJ concluded that the change would significantly alleviate Booth's pain.[2] *See* R. 78.

To be sure, the ALJ failed to note that Booth consistently rated his pain as ranging from a two to a seven or eight on a ten-point scale, R. 325-26, 444, 449, 453, 514, 532, 537, 560, and on November 5, 2018, Booth reported that his pain ranged from six to nine on a ten-point scale when he was not taking Percocet, R. 532. The ALJ also did not mention that doctors at the Doleys Clinic observed that in July 2017, Booth "had a slight limp favoring the right leg," adjusted his position during

---

[2] There are no records from the relevant time to show how the medication change actually impacted Booth's condition. Records submitted to the Appeals Council reveal that in August 2019, Booth reported to Dr. Doleys that his pain level ranged from a four to an eight on a ten-point scale, and Dr. Doleys observed that Booth had a slight limp favoring his right leg, adjusted his position from time to time during the interview as though uncomfortable, and was slow getting up from a seated position. R. 9. There is nothing, however, in this entry to suggest that the Percocet medication had failed to revert Booth back to his earlier report that he was able to perform household tasks and work when on Percocet.

11

the interview, and had "some weakness in the right leg and the musculature seem somewhat smaller," and Dr. Doleys "suggested [Booth] apply[] for Social Security disability" because "[h]is condition is likely to continue to deteriorate," R. 324-25; in January 2018, Booth was slow getting up from a seated position, R. 453; and in July 2018, Booth "adjusted his position regularly as though to accommodate for the pain," R. 519.  This failure, however, is harmless as it is based on treatment notes that pre-date or conflict with the physicians' observations of Booth and Booth's own reports that he was 80% improved and could work.

The results of Booth's two MRIs also do not undermine the ALJ's findings. *See* R. 77.  The first MRI in March 2017 revealed a mild disc bulge at L3-4, a moderate disc bulge at L4-5 with "severe neural foraminal canal encroachment on the right probably causing some degree of nerve impingement," and mild disc bulge at L5-S1 with probably nerve impingement.  R. 232.  Dr. Doleys noted that this MRI revealed "progression in [Booth's] spinal disease process" and that Booth had "significant stenosis at L4 and L5."  R. 325.  Then, over a year later, in July 2018, Dr. Doleys recommended that, in light of "changes in symptoms," Booth return to his orthopedic doctor for an updated consultation regarding surgery.  R. 519-20.  And, Booth's orthopedic doctor, Dr. Spain Hodges, ordered an MRI on August 14, 2018, which revealed "degenerative disc disease and spondylosis L4/L5 and L5/S1." R. 528-29.  As the ALJ noted, however, Dr. Hodges found that the "findings appear

12

stable compared to [Booth's] previous" MRI in March 2017, R. 528-29; *see also* R. 77. Still, Dr. Hodges reported that "given the long-standing nature of [Booth's] symptoms and failure to improve conservatively . . . it would be reasonable to go ahead and proceed with a spinal fusion L4-5 and L5-S1," but that he is "unable to completely anticipate [Booth] being pain-free" and that the likelihood of Booth "getting [] off of narcotic pain medication is relatively low."[3] R. 530; *see also* R. 77. While Booth contends that Dr. Booth's report supports his disability contention, an ongoing need for pain medication is far different than a statement that Booth is unable to function because of his medical condition. Consequently, this report, even if Booth is correct that the ALJ failed to consider it, does not show that the ALJ erred.

Indeed, in spite of the disc bulges and stenosis revealed by Booth's 2017 MRI, at a consultative exam with Dr. Dallas M. Russell on September 20, 2017, Booth had a normal range of motion in his cervical and dorsolumbar spine on exam and Booth's straight leg raise testing was negative. R. 412, 416. While Dr. Russell noted that Booth had tenderness in his back and LS paraspinal muscles, he also observed that Booth did not have difficulty getting on and off the exam table, had a normal gait and station, and could squat, heel/toe walk, and tandem walk. R. 416. Finally,

---

[3] Booth contends that Dr. Hodges "basically encouraged [him] not to" have the surgery by telling Booth that the surgery "would help temporarily" and that he would eventually have to have surgery on the vertebrae above the fusion site. *See* R. 30-31.

13

during a visit to St. Vincent's East Emergency Department on May 31, 2018 for high fever and nausea, Zachary C. McCoy, CRNP noted on physical exam that Booth had normal range of motion in his back and no tenderness.[4]  R. 489.

To close, it is clear from the record that Booth repeatedly reported significant amounts of pain, which he has had for years.  Still, credibility determinations are the province of the ALJ.  *Wilson v. Heckler*, 734 F.2d 5513, 517 (11th Cir. 1984).  And, although the ALJ did not mention all aspects of the medical records in his decision, he was not required to do so, and the ALJ's discussion of Booth's medical records was sufficient to show that "the ALJ considered [Booth's] medical condition as a whole."  *See Dyer*, 395 F.3d at 1212.  Moreover, the medical records discussed above provide substantial support for the ALJ's finding that Booth's subjective testimony about the limiting effects of his back pain was not consistent with the objective medical evidence.  *See* R. 77.  Thus, in light of the substantial deference owed to the Commissioner's decision, *see Dyer*, 395 F.3d at 1212, the court affirms the ALJ's ruling discounting Booth's subjective accounts of pain.

## B.

Next, Booth challenges the ALJ's findings related to Booth's daily activities. The ALJ found that Booth "reported he can do light chores, hunt a few times a year,

---

[4] Booth reported to Mr. McCoy that he had a pain level of seven. R. 510. It is not clear from the records if that pain related only to Booth's nausea and fever, but the records from St. Vincent's East do not mention Booth's back condition or degenerative disc disease. *See* R. 469-510.

prepare simple meals, and [is] independent with personal care[,]" and that Booth "alleged he can walk for only 300 yards and pay attention for only a few minutes, yet he can go hunting, follow instructions, go to church, go to the doctor's office, and go grocery shopping, all of which require him to walk more than 300 yards."[5] R. 80. Booth contends that the ALJ's finding improperly discredits the limitations Booth reported regarding his activities. Doc. 14 at 13-15.

As Booth points out, the ALJ did not mention that Booth indicated that he can do light cleaning for only twenty minutes, only cook frozen dinners that take five minutes to prepare, and getting dressed is painful for him. R. 77, 177-78. The ALJ also failed to mention that Booth limits his church attendance to one or two times a month for one hour, goes to the doctor's office only once a month, and can hunt only once or twice a year for two to three hours. R. 77, 180. Nevertheless, those omissions are not error because the ALJ does not have to mention every piece of evidence in his decision. *See Dyer*, 395 F.3d at 1212. Moreover, the ALJ correctly noted that Booth's reports that he can hunt, even once or twice a year, and can go grocery shopping with his wife once a week for more than one hour at a time reflect that Booth can walk more than 300 feet, or more than 300 yards. *See* R. 77, 179-80. And, critically, as the Commissioner points out, the ALJ did not rely solely on

---

[5] The ALJ's statement contains a scrivener's error because Booth actually alleged that he can walk only 300 feet before he has to rest. *See* R. 181.

15

Booth's self-reported activities in his decision to discount Booth's subjective testimony, *see* doc. 16 at 13, and the medical records discussed above provide substantial evidence to support the ALJ's decision.

## VI.

For the reasons discussed above, the ALJ applied the correct legal standards and substantial evidence supports his decision. Consequently, the Commissioner's final decision is due to be affirmed, and the court will issue a separate order in accordance with this opinion.

**DONE** the 2nd day of August, 2021.

								_____
								**ABDUL K. KALLON**
								UNITED STATES DISTRICT JUDGE